IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00786-NYW

TIMOTHY SPENCER,

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,[1]

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

    This civil action arises under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33, for review of the final decision of the Commissioner of Social Security Administration (the "Commissioner" or "Defendant") denying the application for Disability Insurance Benefits ("DIB") filed by Timothy Spencer ("Plaintiff" or "Mr. Spencer"). Pursuant to the Parties' consent, [Doc. 19], this civil action was assigned to this Magistrate Judge for a decision on the merits. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2; *see also* [Doc. 25]. After carefully considering the Parties' briefing, the entire case file, the Administrative Record, and the applicable case law, this court respectfully **REVERSES** and **REMANDS** the Commissioner's decision.

---

[1] On July 9, 2021, President Biden appointed Kilolo Kijakazi as Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Kijakazi should be substituted for Andrew M. Saul, former Commissioner of Social Security, as the defendant in this suit. No further action need be taken to continue this suit pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## BACKGROUND

Mr. Spencer, born September 29, 1980, alleges that he became disabled on September 10, 2015 due to his chronic depression, back injury, chronic insomnia, asthma, and restless leg syndrome. *See* [Doc. 15-6 at 254; Doc. 15-7 at 275].[2] He alleged that he stopped working due to his conditions on September 1, 2016. [Doc. 15-7 at 275]. Given his various ailments, Mr. Spencer filed his application for DIB on May 22, 2017. *See* [Doc. 15-6 at 254].[3] The Social Security Administration denied Plaintiff's applications administratively on September 22, 2017. *See* [Doc. 15-4 at 80]. Mr. Spencer submitted a request for a hearing before an Administrative Law Judge, *see* [*id.* at 83], which was held before Administrative Law Judge Rebecca LaRiccia (the "ALJ") on June 4, 2019. [Doc. 15-2 at 34].

Following the hearing, the ALJ issued a decision on July 16, 2019 finding that Mr. Spencer met the insured status requirements of the Act on December 31, 2018 and that he did not engage in substantial gainful activity from his alleged onset date of September 10, 2015 through December 31, 2018. [Doc. 15-2 at 17]. The ALJ determined that Mr. Spencer had the following severe impairments: degenerative disc disease, asthma, depression, and anxiety. [*Id.*]. In addition, the ALJ found that Mr. Spencer had moderate limitations "[i]n understanding, remembering, or applying information;" in "concentrating, persisting, or maintaining pace," and in "adapting or managing oneself." [*Id.* at 19-20]. However, the ALJ determined that Mr. Spencer was not

---

[2] When citing to the Administrative Record, the court utilizes the docket number assigned by the Electronic Court Filing ("ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents, the court cites to the document and page number generated by the ECF system.

[3] Mr. Spencer's briefing states that he applied for DIB on May 19, 2017. *See* [Doc. 20 at 2]. However, the record suggests that the DIB application was filed on May 22, 2017. *See* [Doc. 15-6 at 2]. The exact date of the application is not material to this court's resolution of this matter.

disabled because his residual functional capacity ("RFC") permitted him to perform a range of light work as defined in 20 C.F.R § 404.1657(b),[4] with the following limitations:

> [H]e can frequently climb ramps and stairs; cannot climb ladders, ropes or scaffolds; is not limited in balancing; can only occasionally stoop; and can frequently kneel, crouch, and crawl. He must avoid extreme cold, humidity, and vibrating tools, as well as unprotected heights and dangerous moving machinery. He must avoid concentrated exposure to smoke, dust, fumes, chemicals, and pulmonary irritants. He can understand, remember, and carry out simple and detailed instructions that can be learned in six months or less, but not complex instructions. He can sustain persistence and pace for simple and detailed work.

[*Id.* at 20].

Plaintiff requested review of the ALJ decision, [Doc. 15-2 at 7-8], which the Appeals Council denied on January 29, 2020, [*id.* at 1], rendering the ALJ's decision the final decision of the Commissioner. Mr. Spencer then sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on March 12, 2020. [Doc. 1]. Because this matter is ripe for consideration, I consider the Parties' arguments below.

## LEGAL STANDARDS

An individual is eligible for DIB benefits under the Act if he or she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). For purposes of DIB, the claimant must prove that he or she was disabled prior to his date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007). An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do[his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

3

gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 13382c(a)(3)(B). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.905. When a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). These include:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the Residual Functional Capacity ("RFC") to perform his past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis[,]" while the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In reviewing the Commissioner's final decision, the court limits its inquiry to whether substantial evidence supports the final decision and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty*, 515 F.3d at 1070 (internal citation omitted); *accord Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). "But in making this determination, [the court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

## ANALYSIS

Mr. Spencer identifies several issues in the ALJ's decision which he argues warrant remand. *See generally* [Doc. 20 at 4]. Specifically, Mr. Spencer asserts that the ALJ erred when (1) the ALJ found the opinion of Dr. Gayle Frommelt ("Dr. Frommelt") to be "persuasive," but "then ignored her limitations," thus failing to comply with controlling law, [*id.* at 8-12]; (2) the ALJ failed to properly evaluate the opinions of the consultative examiner, Dr. David Fohrman ("Dr. Fohrman") or Mr. Spencer's treating physician, Dr. Kyle Hampton ("Mr. Hampton"), [*id*. at 12-16]; (3) the ALJ ignored lay witness statements from Maxine Spencer, Plaintiff's mother ("Ms. Spencer"), and career counselor Anita Miller ("Ms. Miller") in determining Plaintiff's RFC, [*id.* at 16-17]; and (4) the ALJ failed to properly assess Plaintiff's subjective testimony regarding his symptoms, [*id.* at 17-19]. In response, the Commissioner argues that the ALJ properly considered all of the record evidence, including the lay witness statements and Plaintiff's subjective statements, and sufficiently explained and supported her reasons for her weighing of the medical

source opinions and ultimate RFC findings. *See generally* [Doc. 21]. For the following reasons, I agree with Plaintiff that remand is warranted here.

I.    **The RFC Assessment**

In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) (unpublished). A claimant's RFC is the most work the claimant can perform, not the least. 20 C.F.R. § 404.1545; SSR 83-10. "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")). The ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004).

In assessing a claimant's RFC, the ALJ must address the record's medical source opinions. *See Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015). The Social Security Regulations (the "Regulations") provide that an ALJ must evaluate the persuasiveness of a medical opinion using the following factors: (1) supportability; (2) consistency; (3) the provider's relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of the treatment relationship, and whether the

6

treatment relationship is an examining relationship; (4) the medical source's area of specialization; and (5) other factors "tending to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c); *Pearson v. Saul*, No. 20-cv-01808-NRN, 2021 WL 2549214, at *3 (D. Colo. June 22, 2021). The Regulations provide that the factors of supportability and consistency "are the most important factors" to consider "when [the ALJ] determine[s] how persuasive [the ALJ] find[s] a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2). The ALJ is therefore required to explain in the final decision how he or she considered the supportability and consistency of a medical source's opinion, and "may, but [is] not required to, explain how [the ALJ] considered the [remaining factors], as appropriate." *Id.*

At bottom, the ALJ must "consider all evidence in [the] case record when [making] a determination or decision whether [the claimant] is disabled." 20 C.F.R. § 404.1520(a)(3). This means that, in addition to discussing supporting evidence, the ALJ must "discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Mestas v. Kijakazi*, No. 20-CV-01865-REB, 2021 WL 3030224, at *3 (D. Colo. July 19, 2021) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)).

**II.    Plaintiff's Arguments**

Mr. Spencer argues that the ALJ erred in the following ways: (1) the ALJ found the opinion of Dr. Frommelt to be "persuasive," but "then ignored her [opinion as to Mr. Spencer's] moderate limitation in the ability to adapt or manage oneself;" (2) the ALJ failed to properly evaluate the opinions of Dr. Fohrman and Dr. Hampton; (3) the ALJ ignored statements from Ms. Spencer and Ms. Miller in finding that Plaintiff is not disabled; and (4) the ALJ improperly assessed Mr. Spencer's subjective statements concerning his symptoms. [Doc. 20 at 4]. The court finds

7

Plaintiff's first argument dispositive, as it relates to the formulation of Mr. Spencer's RFC—which in turn underlies her other determinations.

Mr. Spencer asserts that it was error for the ALJ to "ignore[]" the fact that Dr. Frommelt opined that Mr. Spencer had moderate limitations in the ability to regulate oneself, particularly where the ALJ otherwise found Dr. Frommelt to be persuasive. [*Id.* at 8-9]. In her assessment, Dr. Frommelt opined that Mr. Spencer has moderate limitations in the ability to understand, remember, or apply information; to concentrate, persist, or maintain pace; and to adapt or manage oneself. [Doc. 15-3 at 69, 74]. In addition, she found that Mr. Spencer was not significantly limited in his ability to carry out very short and simple instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule or maintain regular, punctual attendance; to sustain an ordinary routine; or to work in coordination with others without being distracted by them. [*Id.* at 74]. However, Dr. Frommelt further opined that Mr. Spencer is moderately limited in the ability to respond appropriately to changes in the work setting and in the ability to set realistic goals or make plans independently of others, and also noted that Mr. Spencer "reports diff[iculty] [with] stress/change." [*Id.* at 75]. Dr. Frommelt concluded that "[t]he claimant remains capable of work of limited complexity but which requires accuracy and attention to detail." [*Id.* at 75].

In her decision, the ALJ found Dr. Frommelt's opinion "persuasive" because it was supported by references to objective medical evidence, contained explanations as to why such evidence directed such limitations, and was consistent with the record as a whole. [Doc. 15-2 at 24]. As such, the ALJ expressly adopted Dr. Frommelt's findings that Mr. Spencer has moderate limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. [*Id.* at 19-20]. Further, she noted that Mr.

8

Spencer reported "that he does not handle stress well or changes in his routine well" and "does not finish what he starts," but that he also reported that he is able to complete activities of daily living, such as driving, preparing simple meals, and handling his finances. [*Id.*]. Despite these limitations, the ALJ ultimately concluded that Mr. Spencer had the RFC to perform light work, with the following mental limitations: "can understand, remember, and carry out simple and detailed instructions that can be learned in six months or less, but not complex instructions. He can sustain persistence and pace for simple and detailed work." [*Id.* at 20]. The ALJ stated that these limitations were "all accounted for in the limitation to simple and detailed instructions and work that can be learned in a limited amount of time." [*Id.* at 23-24].

Mr. Spencer argues that the ALJ ignored Dr. Frommelt's opinion concerning Plaintiff's moderate limitation in the ability to adapt or manage oneself in determining Plaintiff's RFC. [Doc. 20 at 8]. More specifically, Mr. Spencer asserts that, despite the fact that the ALJ adopted Dr. Frommelt's finding that Mr. Spencer is moderately limited in the ability to adapt or manage oneself, "[t]here does not appear to be any limitation [in the RFC] associated with" that limitation. [*Id.* at 10]. According to Mr. Spencer, the ALJ was required to either incorporate Dr. Frommelt's limitation or explain why she was not including such limitation, and the ALJ failed to do so. [*Id.* at 9]. Mr. Spencer asserts that this constitutes reversible error. *See generally* [*id.*]. The Commissioner disagrees, asserting that "[t]he Tenth Circuit has recognized that an ALJ can account for ratings of moderate limitations by restricting the complexity of a claimant's work." [Doc. 21 at 18]. For this reason, the Commissioner asserts that the ALJ sufficiently accounted for the adaptive-functioning limitation when she indicated that Plaintiff had the RFC to carry out "simple and detailed instructions" and could sustain persistence and pace for "simple and detailed

work." [*Id.*]. According to the Commissioner, Mr. Spencer's argument is a veiled request that the court re-weigh the evidence before the ALJ, which this court cannot do. [*Id.* at 19].

The Tenth Circuit has "generally held that restricting a claimant to particular work activities does not adequately account for the claimant's mental limitations." *Parker v. Commissioner*, 772 F. App'x 613, 616 (10th Cir. 2019) (unpublished) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012)); *see also Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) (unpublished) ("A limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments."). Indeed, a "claimant's functional ability is distinct from the skill level required to perform a particular job." *Valdez v. Saul*, No. 17-cv-02610-PAB, 2020 WL 2832372, at *4 (D. Colo. June 1, 2020). "Because [an individual's] response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job." SSR 85-15, 1985 WL 56857, at *6 (SSA 1985). Thus, an ALJ generally must account for moderate limitations "*with precision* in the ultimate determination of the claimant's residual functional capacity," and must express the claimant's moderate impairments in mental functioning "in terms of work-related functions" or "work-related activities." *Warren v. Colvin*, 170 F. Supp. 3d 1360, 1364-65 (D. Colo. 2016) (emphasis added) (quotation and alteration marks omitted) (citing *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) (unpublished)). Only if "the connection (between the limitation and the work) is obvious" may an ALJ "account for mental limitations by limiting the claimant to particular kinds of work." *Parker*, 772 F. App'x at 616.

"[A] case-by-case analysis is required to determine whether an RFC's limitations adequately account for all impairments found by the ALJ and supported by the record." *Marquez-Hernandez v. Commissioner*, No. 17-cv-01513-MSK, 2018 WL 2328401, at *7 (D. Colo. May 22, 2018). Although "[l]imited or general findings of impairment do not *necessarily* translate into a work-related functional limitation," *id.* (citing *Vigil*, 805 F.3d at 1203) (emphasis in original), "where an ALJ has found more specific limitations [than general findings of impairment], the RFC must more specifically account for those impairments in the RFC." *Id.* (citing *Chapo*, 682 F.3d at 1290-91 and *Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) (unpublished)); *see also* SSR 85-15, 1985 WL 56857, at *6 ("Any impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment."). Indeed, an ALJ "ordinarily must explain how a work-related limitation accounts for mental limitations reflected in a medical opinion." *Parker*, 772 F. App'x at 616.

Here, the ALJ found that Mr. Spencer had moderate limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. [Doc. 15-2 at 19-20]. In her RFC determination related to Plaintiff's mental limitations, the ALJ stated that Mr. Spencer "can understand, remember, and carry out simple and detailed instructions that can be learned in six months or less, but not complex instructions. He can sustain persistence and pace for simple and detailed work." [*Id.* at 20]. Plaintiff suggests that this RFC assessment fails to take into account Dr. Frommelt's—and the ALJ's—finding that Plaintiff is moderately limited in the ability to adapt or manage oneself. [Doc. 20 at 9-10]. The court respectfully agrees.

The ability to adapt or manage oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. § pt. 404, subpt. P, app. 1, Listing

12.00E(4).  Examples of such abilities include: "[r]esponding to demands; *adapting to changes*; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions."  *Id.* (emphasis added).  Moreover, a "moderate limitation" in this area means that an individual's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair."  20 C.F.R. § Pt. 404, subpt. P, app. 1 Listing 12.00(F)(2)(c).  A moderate impairment "is not the same as no impairment at all," *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007), and a moderate limitation in the ability to adapt or manage oneself "supports the conclusion that the individual's capacity to perform the activity is impaired."  *Warren*, 170 F. Supp. 3d at 1364 (quoting Program Operations Manual System ("POMS") DI § 24510.063(B)(2)).[5]  Moderate limitations "must be accounted for in an RFC finding."  *Jaramillo*, 576 F. App'x at 876.  Upon review of the Administrative Record, ALJ's decision, and applicable case law, the court cannot conclude that the ALJ properly accounted for Plaintiff's moderate limitation in adapting or managing oneself in her RFC assessment.

A recent unpublished Tenth Circuit opinion is instructive here.  In *Parker*, the ALJ credited medical source opinions indicating that the claimant had several moderate mental limitations, including a moderate limitation in his ability to respond to routine changes in the work setting.  772 F. App'x at 614-15.  On appeal, the claimant argued that the ALJ failed to incorporate the

---

[5] "The POMS is 'a set of policies issued by the Administration to be used in processing claims.'" *Warren*, 170 F. Supp. 3d at 1364 n.7 (quoting *McNamar v. Apfel*, 172 F. 3d 764, 766 (10th Cir. 1999)).  "The court 'defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'"  *Id.* (quoting *Ramey v. Reinertson*, 268 F.3d 955, 964 n. 2 (10th Cir. 2001) (alteration marks in original)).

medical source opinions, including the opinion as to his moderate limitation in adapting to changes, in determining his RFC. *Id.* at 615. In response, and similar to the instant matter, the Commissioner argued that the ALJ had sufficiently accounted for the adaptive-functioning limitation by finding that the claimant was unable to engage in work that required complex tasks or instructions or work at a pace customary for a production line. *Id.* at 616. The Tenth Circuit rejected this argument, finding that, because the connection between the claimant's limitations in adapting to changes in the work setting and the limitation to non-complex, slower-pace work was not obvious, and because the ALJ failed to "explain how [the ALJ's] finding would account for [the medical source] opinion," the RFC assessment "did not adequately incorporate [the] opinion involving a moderate limitation in the ability to respond appropriately to usual work situations and changes in a work setting." *Id.*

Moreover, other district courts within this Circuit have similarly concluded that limitations to simple or unskilled work fail to adequately account for moderate limitations in one's ability to adapt or manage oneself. In *Garcia v. Saul*, the claimant argued that the ALJ had failed to account for his moderate limitations in adapting or managing himself where the ALJ limited the claimant to "simple, routine tasks, simple work-related decisions, maintaining attention and concentration for two-hour segments, and occasional interactions with others including supervisors, co-workers, and the general public" and thus failed to adequately explain why the ALJ necessarily rejected the medical source opinions opining about his moderate limitation. 509 F. Supp. 3d at 1311, 1314 (D.N.M. 2020). The court agreed with the claimant; finding that the claimant's adaptation limitation was not obviously accommodated by a reduction in skill level, the court concluded that the RFC assessment failed to take into account Plaintiff's adaptation limitation or "explain[] how Plaintiff's ability to perform unskilled or simple, routine work was unaffected by his moderate

limitation in adaptive functioning." *Id.* at 1316-17. Because the ALJ had necessarily rejected the moderate adaptation limitations posited by the medical sources, the court determined that the ALJ erred in failing to explain why he rejected that limitation. *Id.* at 1318.

Likewise, in *Geyer v. Saul*, the ALJ arrived at an RFC limiting the claimant to "understanding, remembering, and carrying out simple, routine tasks, making simple work-related decisions, dealing with changes in a routine work setting, attending and concentrating for at least two-hour intervals, and frequent interactions with others including supervisors, co-workers, and the general public." No. CIV 20-0351 KBM, 2021 WL 2018873, at *2 (D.N.M. May 20, 2021). The plaintiff argued that this RFC assessment failed to account for his moderate adaptive functioning limitation, *id.* at *3, and the court agreed. *Id.* at *4. Specifically, the court found that the ALJ had failed to "explain how the RFC account[ed] for the moderate limitations in Plaintiff's ability to deal with changes in a routine work setting, [a] skill critical to unskilled work," and noted that the bare statement that the plaintiff could "deal[] with changes in a routine work setting" failed to "incorporate the moderate limitation [the medical source] assessed." *Id.* The court found this failure to be reversible error. *Id.* Finally, in *Fatheree v. Saul*, No. CV 19-704 JFR, 2020 WL 3448082 (D.N.M. June 24, 2020), the district court concluded that the ALJ's RFC assessment that the plaintiff was limited to "simple and some detailed tasks" failed to "account for a limitation in the ability to respond to changes in the workplace, which is a mental demand critical to the performance of unskilled work." *Id.* at *10 n.27. Finding that the RFC was "*not* consistent with the [medical source] narratives," the court reversed and remanded the case for further proceedings. *Id.* at *11-12 (emphasis in original).

The court finds each of these cases persuasive. Even assuming that the RFC assessment in this case adequately accounted for Mr. Spencer's moderate limitations in understanding,

14

remembering, or applying information and concentrating, persisting, or maintaining pace, nothing in the RFC assessment specifically accounted for Plaintiff's moderate limitation in adapting or managing oneself. Put another way, Mr. Spencer may have the raw ability to perform a certain task in a vacuum, but not have the ability to perform it as expected within the context of an ordinary workplace. Although the ALJ, in her RFC assessment, limited Plaintiff to work involving "simple and detailed instructions" and "simple and detailed work," [Doc. 15-2 at 20], the ability to adapt or manage oneself "is separate and distinct from the ability to complete simple, routine tasks [or] to make simple work-related decisions." *Garcia*, 509 F. Supp. 3d at 1316 (citing POMS § DI 25020.10(A)(3)(A)). Indeed, although the ALJ noted that Mr. Spencer "reports that he does not handle stress or changes in his routine well," *see* [Doc. 15-2 at 21]; *see also* [Doc. 15-3 at 75 (Dr. Frommelt noting that Mr. Spencer reports difficulty with stress and change)], which provides further support for the identified limitation, the ALJ failed to account for such limitation in the RFC assessment. Nor did the ALJ "explain[] how Plaintiff's ability to perform unskilled or simple, routine work was unaffected by his moderate limitation in adaptive functioning." *Garcia*, 509 F. Supp. 3d at 1317. But because the connection between the limitation to "simple and detailed instructions" and "simple and detailed work" and Plaintiff's adaptive functioning limitation is not obvious, *see Parker*, 772 F. App'x at 616 ("[A]ny job would typically require an ability to respond appropriate to usual work situations and changes in routine work settings," and "thus . . . the agency's findings[] restricting the complexity or pace of [the claimant's] work[] did not adequately incorporate" the adaptive functioning limitation),[6] the ALJ was required to "explain how a work-

---

[6] *Compare Vigil*, 805 F.3d at 1203-04 (ALJ adequately accounted for the claimant's memory and concentration deficits where the ALJ limited the claimant to unskilled work and found that the claimant "retained enough memory and concentration to perform simple tasks," which was commensurate with unskilled work) (alteration marks omitted)), *and Lee v. Colvin*, 631 F. App'x 538, 542 (10th Cir. 2015) (unpublished) (finding that the ALJ adequately accounted for the

15

related limitation accounts for mental limitations reflected in a medical opinion," *id.*, which the ALJ did not do.

This omission is particularly notable in light of the fact that the Social Security Administration has instructed that "[t]he basic mental demands of competitive, remunerative, unskilled work include the ability[y] (on a sustained basis) to . . . deal with changes in a routine work setting," POMS § DI 25020.010(A)(3)(a), and has deemed the ability to "respond appropriately to changes in a (routine) work setting" necessary for *any* job. POMS § DI 25020.010(B)(2)(c); *see also Gonzales v. Colvin*, 213 F. Supp. 3d 1326, 1332 (D. Colo. 2016) ("[A]n inability to adapt to changes in the workplace is inconsistent with the most fundamental demands of unskilled jobs."). "While some of the mental abilities needed for skilled work are greater than for unskilled work, this is not true for a worker's adaptability to change." *Id.*[7] An ALJ is required to account for *all* of the claimant's medically determinable impairments, 20 C.F.R.

---

claimant's limitations in the ability to maintain attention and concentration and the ability to accept instruction and respond appropriately to criticism by limiting the claimant to jobs with simple tasks, routine supervision, and interactions with supervisors on a superficial work basis).

[7] The court recognizes that, in her decision, the ALJ found that there was "no evidence of marginal adjustment, defined as the minimal capacity to adapt to changes in the claimant's environment or to demands not already part of [his] daily life." [Doc. 15-2 at 20]. However, this finding does not change this court's analysis. "Marginal adjustment means that the claimant's "adaptation to the requirements of daily life is *fragile*; that is, [the claimant has] minimal capacity to adapt to changes in [his or her] environment or to demands that are not already part of [his or her] daily life." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00G.2.c (emphasis added). Here, Dr. Frommelt and the ALJ each concluded that Mr. Spencer is *moderately* limited in his ability to adapt and manage oneself. *See, e.g.*, [Doc. 15-2 at 20]; [Doc. 15-3 at 69]. As set forth above, a moderate limitation means that an individual's "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is *fair*." 20 C.F.R. § pt. 404, subpt. P, app. 1, Listing 12.00F(2)(c) (emphasis added); *but see Warren*, 170 F. Supp. 3d at 1364 (a moderate limitation suggests "that the individual's capacity to perform the activity is impaired"). Thus, the ALJ's conclusion that Mr. Spencer's ability to adapt to changes was not "fragile" does not explain her failure to account for the general moderate limitation in adaptation identified by both the ALJ and Dr. Frommelt. *See Jaramillo*, 576 F. App'x at 876 (moderate limitations must be accounted for in the RFC assessment).

16

§ 404.1545(a)(1)-(2), and must do so "with precision in the ultimate determination of the claimant's residual functional capacity." *Warren*, 170 F. Supp. 3d at 165. The court cannot conclude that the ALJ did so here.

Although the Commissioner cites *Smith*, 821 F.3d 1264, for the general proposition that "an ALJ can account for ratings of moderate limitations by restricting the complexity of the claimant's work," [Doc. 21 at 18], *Smith* does not change the court's analysis here. In *Smith*, a medical source had opined that the claimant could engage in work that was limited in complexity and could manage social interactions so long as they were not frequent or prolonged. *Id.* at 1268. After a fact-specific analysis, the Tenth Circuit concluded that the ALJ had sufficiently accounted for these limitations in the RFC assessment where the ALJ had stated that the claimant could not engage in face-to-face contact with the public and could engage in only simple, repetitive, and routine tasks. *Id.* at 1269. Although the *Smith* court did not expressly employ the "obviousness" threshold set forth by the Tenth Circuit in *Parker*, this court notes that such rationale is woven throughout the opinion; indeed, a limitation against face-to-face contact with the public is obviously related to a limitation in the claimant's social interactions, as is the limitation in complexity of tasks and the restriction to simple, repetitive, and routine tasks. Thus, in *Smith*, the more general limitation statements were sufficient to account for the mental impairments reflected in the record. But contrary to the Commissioner's position, *Smith* does not "reflect[] a blanket rule that a generally-stated limitation to 'unskilled' work'" (or "simple" work) "will be sufficient to account for any or all mental health impairments that the ALJ has found." *Marquez-Hernandez*, 2018 WL 2328401, at *5.

Moreover, by failing to sufficiently incorporate the adaptive-functioning limitation into the RFC, the ALJ necessarily rejected the opinion of Dr. Frommelt insofar as she opined that Mr.

17

Spencer was moderately limited in adapting or managing oneself.[8] Having offered no basis for this apparent rejection, the ALJ failed to adequately explain why she was not incorporating Dr. Frommelt's opinion as to Mr. Spencer's adaptative-functioning limitation. *See Parker*, 772 F. App'x at 615 ("If the agency had decided to omit particular limitations embodied in the . . . medical opinions, the agency needed to explain the omissions."); *see also Garcia*, 509 F. Supp. 3d at 1235 (finding that the ALJ "erred in failing to include *or explain the omission of* an adaption limitation in the RFC" (emphasis added)).

For all of these reasons, the court concludes that the ALJ erred in failing to account for Mr. Spencer's adaptive-functioning limitation and that such error was not harmless. *See Parker*, 772 F. App'x at 617-18 (finding that the ALJ's failure to account for limitation in responding to routine changes in the work setting, coupled with the failure to explain why such limitation was rejected, was legal error and required reversal "even if the agency's findings are otherwise supported by substantial evidence"); *see also Jensen v. Barnhart*, 436 F.3d 1163, 1165 (failure to apply the proper legal standard is grounds for reversal); *Geyer*, 2021 WL 2018873, at *5 (classifying argument that ALJ failed to account for mental limitation or explain why such limitation was rejected as an argument that the ALJ failed to apply the proper legal standards). Because "an inability to adapt to changes in the workplace is inconsistent with the most fundamental demands of unskilled jobs," *Gonzales*, 213 F. Supp. 3d at 1332, the court cannot "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual

---

[8] The court acknowledges that the ALJ indicated that she was *not* rejecting Dr. Frommelt's limitation as to adaptive functioning, instead stating that "the claimant's limitations in the ability to . . . adapt or manage oneself are all accounted for in the limitation to simple and detailed instructions and work that can be learned in a limited amount of time." [Doc. 15-2 at 23-24]. However, because the court finds that the RFC assessment failed to account for the adaptive-functioning limitation, the court finds that the ALJ's failure to explain the (perhaps unintended) rejection of the limitation is error here. *See Geyer*, 2021 WL 2018873, at *4.

matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). As such, the court finds that remand is warranted here. *See Garcia*, 509 F. Supp. 3d at 1318 ("[T]he Court ultimately concludes that the ALJ's RFC assessment failed to account for Plaintiff's moderate limitations in adaptive functioning. Likewise, the ALJ failed to explain why he rejected the moderate adaptation limitations opined by Drs. McGaughey and Holloway in formulating the RFC. Consequently, remand is required so that the ALJ may properly assess Plaintiff's RFC, to include some explanation of the degree and extent of his adaptation limitations."); *see also Geyer*, 2021 WL 2018873, at *4 ("[T]he Court finds that the RFC does not incorporate the moderate limitation Dr. Krueger assessed. As the ALJ did not explain why he rejected this limitation, the Court finds reversible error.").

Thus, the court will reverse and remand the Commissioner's decision for further proceedings consistent with this order. The court declines to pass on the other arguments raised in Mr. Spencer's briefing, as "they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). However, on remand, the administrative law judge is directed to consider other issues raised in Mr. Spencer's briefing and to modify the decision as appropriate.

## CONCLUSION

For the reasons stated herein, the court hereby **REVERSES** the Commissioner's final decision and **REMANDS** this matter for further proceedings consistent with this Memorandum Opinion and Order.

DATED: September 10, 2021

BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge